Daniel L. Balsam (Cal. State Bar. No. 26423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873 • Fax: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker *(application for admission pending)*
LAW OFFICES OF JACOB HARKER
268 Bush Street #3732
San Francisco, CA 94104
Tel: (415) 624-7602 • Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Adam G. Taub (Mich. State Bar No. P48703)
ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP PC
17200 W 10 Mile Road, Suite 200
Southfield, MI 48075
Tel: (248) 746-3790
Email: adamgtaub@clgplc.net

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

| | |
|---|---|
| MASON FARRELL, an individual;<br>TANISHA CARTER, an individual;<br>WILLIAM GREENBERG, an individual;<br>KRISTINA KIRBY, an individual;<br>DEIDRE LOVE, an individual; and<br>VANESSA POWERS, an individual;<br><br>Plaintiffs,<br>v.<br><br>HILLSDALE COLLEGE INC., a Michigan nonprofit corporation;<br>POP ACTA MEDIA LLC, a Florida limited liability company;<br>O2M DIGITAL LLC, a Texas limited liability company;<br>AOC ALERTS, a business entity of unknown organization; | Case No.:<br><br>**COMPLAINT FOR LIQUIDATED DAMAGES**<br><br>1. **VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)** |

BACKING AMERICA NOW, a business entity
of unknown organization;
BUILD OUR MOVEMENT, a business entity
of unknown organization;
CONSERVATIVE INTEL, a business entity of
unknown organization;
LEAD AMERICA 24, a business entity of
unknown organization;
PATRIOT AND FREE, a business entity of
unknown organization;
PENCE NEWS, a business entity of unknown
organization; and
DOES 1-1,000;

                   Defendants.

COME NOW PLAINTIFFS MASON FARRELL *et al* and file this Complaint for one cause of

action against Defendants HILLSDALE COLLEGE INC. *et al* and allege as follows:

## I. <u>CALIFORNIA'S ANTI-SPAM LAW</u>

1.      The substantive law in this Action is California's robust Anti-Spam Law, Business &

Professions Code § 17529.5 ("Section 17529.5"), which regulates California spammers *and*

spams sent to California residents.  Section 17529.5 prohibits advertising in unsolicited

commercial email advertisements aka "spams" that include: a) Third parties' domain names

without permission; b) Materially false, misrepresented, and/or forged information contained in

or accompanying the email headers; and/or c) Subject Lines that are likely to mislead a

reasonable recipient as to the contents or subject matter of the spams.  *Id.* at § 17529.5(a).

2.      Merchant-Advertisers (i.e. the persons or entities whose products and services are being

advertised) are strictly liable for *advertising in* unlawful spams, even if they engage or otherwise

associate with someone else who actually *sends* the spams.  *Id.*, and *see* Cal. Bus. & Prof. Code

§ 17529(j), (k).

3.      Spam recipients are not required to allege or prove reliance or actual damages to have

standing to sue.  *Id.* at § 17529.5(b)(1)(A)(iii).

4.      The statute creates liquidated damages of $1,000 per spam, which can be reduced if defendants can prove that they established and implemented reasonably effective practices and procedures to prevent unlawful spamming.  *Id.* at § 17529.5(b)(1)(B)(ii), (b)(2).

5.      In fact, violating Section 17529.5 is a crime punishable by imprisonment in a California county jail.  *Id.* at § 17529.5(b)(3)(C).

6.      A prevailing spam recipient, but not a prevailing defendant, may recover reasonable attorneys' fees and costs.  *Id.* at ¶ 17529.5(b)(1)(C).

## II.  <u>INTRODUCTION AND SUMMARY OF THE COMPLAINT</u>

7.      Plaintiffs MASON FARRELL, TANISHA CARTER, WILLIAM GREENBERG, KRISTINA KIRBY, DEIDRE LOVE, and VANESSA POWERS bring this Action against unrepentant professional "spamvertiser" HILLSDALE COLLEGE INC. ("HILLSDALE") and its third party publishers ("Affiliate-Senders") who advertised in more than 1,400 unlawful unsolicited commercial email advertisements ("spams") that Plaintiffs received, all of which promoted HILLSDALE and its website, goods, and services.  The Affiliate-Senders were HILLSDALE's agents acting at HILLSDALE's direction, and/or were conspiring with HILLSDALE to advertise in the spams promoting HILLSDALE and its website, goods, and services.  The Affiliate-Senders took active steps to conceal their identities when they registered the domain names used to send or facilitate the sending of the spams at issue, and they are liable for their own wrongful acts.

8.      <u>Exhibit A</u>, attached and  incorporated herein by reference, provides two representative samples of the spams at issue.

9.      Plaintiffs never gave "direct consent" to receive commercial email advertisements from, or had a "preexisting or current business relationship" with, HILLSDALE – the Merchant-Advertiser.

10.     The HILLSDALE spams at issue all materially violated at least one provision of Section 17529.5.

11. Plaintiffs need not allege or prove reliance or actual damages to have standing to seek statutory, liquidated damages. Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii), (b)(1)(B).

12. HILLSDALE is strictly liable for *advertising in* the spams at issue, even if it engaged or otherwise associated with someone else to actually *send* the spams. Cal. Bus. & Prof. Code § 17529(j), (k); *Greenberg v. Digital Media Solutions LLC*, 65 Cal. App. 5th 909, 920 (1st Dist. 2021), citing *Hypertouch Inc. v. ValueClick Inc. et al*, 192 Cal. App. 4th 805, 820-21 (2d Dist. 2011). The Affliate-Senders are also liable for advertising in spams that promoted HILLSDALE and its website, goods, and services.

13. This Court should award liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because HILLSDALE and its Affiliate-Senders failed to implement reasonably effective systems to prevent advertising in/conspiring to advertise in unlawful spams. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

14. This Court should award Plaintiffs their costs and attorneys' fees, pursuant to Section 17529.5(b)(1)(C) and Fed. R. Civ. Proc. 54(d).

### III. PARTIES

**A. Plaintiffs**

15. Plaintiff **MASON FARRELL ("FARRELL")** is now, and was at all relevant times, more than 18 years of age and domiciled in and a citizen of California. FARRELL received some of the HILLSDALE spams at issue at his email address masebruh@gmail.com that he ordinarily accesses from California.

16. Plaintiff **TANISHA CARTER ("CARTER")** is now, and was at all relevant times, more than 18 years of age and domiciled in and a citizen of California. CARTER received some of the spams at issue at her email address chriscarter9235@gmail.com that she ordinarily accesses from California.

17. Plaintiff **WILLIAM GREENBERG ("GREENBERG")** is now, and was at all relevant times, more than 18 years of age and domiciled in and a citizen of California. GREENBERG

received some of the spams at issue at his email address greenberg_billy@yahoo.com that he ordinarily accesses from California.

18.     Plaintiff **KRISTINA KIRBY ("KIRBY")** is now, and was at all relevant times, more than 18 years of age and domiciled in and a citizen of California.  KIRBY received some of the spams at issue at her email address krissiekirby@hotmail.com that she ordinarily accesses from California.

19.     Plaintiff **DEIDRE LOVE ("LOVE")** is now, and was at all relevant times, more than 18 years of age and domiciled in and a citizen of California.  LOVE received some of the spams at issue at her email address deidrelove2019@gmail.com that she ordinarily accesses from California.

20.     Plaintiff **VANESSA POWERS ("POWERS")** is now, and was at all relevant times, more than 18 years of age and domiciled in and a citizen of California.  POWERS received some of the spams at issue at her email address vsp0930@yahoo.com that she ordinarily accesses from California.

21.     Plaintiffs' joinder in this Action is proper pursuant to Fed. R. Civ. Proc. 20(a)(1) because Plaintiffs assert a right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and questions of law or fact common to all Plaintiffs will arise in the action.

**B.     Merchant-Advertiser Defendant**

22.     Defendant **HILLSDALE COLLEGE INC. ("HILLSDALE")** is now and was at all relevant times a Michigan nonprofit corporation with a primary place of business in Hillsdale, Michigan.  HILLSDALE owns, controls, and/or operates the hillsdale.edu domain name and the corresponding website.  HILLSDALE advertised in all of the spams at issue in this Action.  Rather than referring to HILLSDALE as the "Advertiser,"[1] in the interest of clarity, Plaintiffs use the term "Merchant-Advertiser" in order to distinguish HILLSDALE from the Affiliate-Senders,

---

[1] "'Advertiser' means a person or entity that advertises through the use of commercial e-mail advertisements."  Cal. Bus. & Prof. Code § 17529.1(a).

below, who are also liable for advertising in the spams at issue that promoted HILLSDALE and its website, goods, and services.

**C.    Affiliate-Sender Defendants**

23.    HILLSDALE used multiple Affiliate-Senders to send spams on its behalf.  These Affiliate-Senders are HILLSDALE's marketing partners or agents, and in that capacity, advertised in the spams at issue that promoted HILLSDALE and its website, goods, and services.

24.    Defendant **POP ACTA MEDIA LLC ("POP ACTA")** is now and was at all relevant times a Florida limited liability company with a primary place of business in Deerfield Beach, Florida.  POP ACTA also operates from Fort Collins, Colorado and Alexandria, Virginia, even though it is not registered with the Colorado or Virginia Secretaries of State.  POP ACTA, together with O2M DIGITAL, does business as americanfreedomreport.com, defend-our-rights.com, libertynationtoday.com, patriotvaluesdefense.com, republicansupport.com, republicantaskforce.com, restore-our-nation.com, trumptrainnews.com, and usconservativenetwork.com.  POP ACTA also does business as American Freedom Report LLC, Liberty Nation Today LLC, Patriot Values Defense LLC, Republican Support LLC, Republican Task Force LLC, and US Conservative Network LLC, even though no such entities (or fictitious names/trade names) are registered with the Florida or Colorado Secretaries of State.  POP ACTA sent and advertised in at least 313 of the spams at issue that promoted HILLSDALE and its website, goods, and services.

25.    Defendant **O2M DIGITAL LLC ("O2M DIGITAL")** is now and was at all relevant times a Texas limited liability company with a primary place of business in Fort Collins, Colorado, even though it is not registered with the Colorado Secretary of State.  O2M Digital also operates from Alexandria, Virginia, even though it is not registered with the Virginia Secretary of State.  O2M DIGITAL, together with POP ACTA, does business as americanfreedomreport.com, defend-our-rights.com, libertynationtoday.com, patriotvaluesdefense.com, republicansupport.com, republicantaskforce.com, restore-our-nation.com, trumptrainnews.com, and usconservativenetwork.com.  O2M DIGITAL also does business as American Freedom Report LLC, Liberty Nation Today LLC, Patriot Values Defense

LLC, Republican Support LLC, Republican Task Force LLC, and US Conservative Network LLC, even though no such entities (or assumed names/trade names) are registered with the Texas or Colorado Secretaries of State.  O2M DIGITAL sent and advertised in at least <u>313</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services.

26.     Defendant **AOC ALERTS** is now and was at all relevant times a business entity of unknown organization, doing business as aocalerts.com, with an unknown primary place of business.  AOC ALERTS sent and advertised in at least <u>236</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services..

27.     Defendant **BACKING AMERICA NOW** is now and was at all relevant times a business entity of unknown organization, doing business as backingamericanow.com, with an unknown primary place of business.  BACKING AMERICA NOW sent and advertised in at least <u>271</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services..

28.     Defendant **BUILD OUR MOVEMENT** is now and was at all relevant times a business entity of unknown organization, doing business as buildourmovement.com and buildingourmovement.com, with an unknown primary place of business.  BUILD OUR MOVEMENT sent and advertised in at least <u>257</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services.

29.     Defendant **CONSERVATIVE INTEL** is now and was at all relevant times a business entity of unknown organization, doing business as conservativeintel.com and conservativeintelalerts.com, with an unknown primary place of business.  CONSERVATIVE INTEL sent and advertised in at least <u>282</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services.

30.     Defendant **LEAD AMERICA 24** is now and was at all relevant times a business entity of unknown organization, doing business as leadamerica24.com, with an unknown primary place of business.  LEAD AMERICA 24 sent and advertised in at least <u>14</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services.

31.     Defendant **PATRIOT AND FREE** is now and was at all relevant times a business entity of unknown organization claiming its place of business to be a box at a commercial mail

receiving agency ("Mail & Print") in Sinking Springs [sic], Pennsylvania.  PATRIOT AND FREE does business as patriotandfree.com, patriotsonline.com, patriotusa.co, theconservativeinsider.com, and thefreepatriotdaily.com.  PATRIOT AND FREE also does business as Patriot and Free, Patriots Online, The Conservative Insider, and The Free Patriot Daily, even though no such entities (or fictitious names) are registered with the Pennsylvania Secretary of State.  PATRIOT AND FREE sent and advertised in at least <u>55</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services.

32.     Defendant **PENCE NEWS** is now and was at all relevant times a business entity of unknown organization, doing business as pencenews.live, with an unknown primary place of business.  PENCE NEWS sent and advertised in at least <u>15</u> of the spams at issue that promoted HILLSDALE and its website, goods, and services.

33.     Plaintiffs refer to POP ACTA, O2M DIGITAL, AOC ALERTS, BACKING AMERICA NOW, BUILD OUR MOVEMENT, CONSERVATIVE INTEL, LEAD AMERICA 24, PATRIOT AND FREE, and PENCE NEWS collectively as the "Affiliates" or "Affiliate-Senders."  There may be more Affiliate-Senders too, who are unknown to Plaintiffs at this time.

**C.    <u>DOE Defendants</u>**

34.     Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as **DOES 1-1,000** and therefore sue said Defendants under the fictitious name of "DOE."  DOES 1-1,000 operate various domain names associated with either sending or hyperlinking from the spams at issue that promoted HILLSDALE and its website, goods, and services.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as DOES 1-1,000 is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for violating Plaintiffs' statutory rights.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as DOES 1-1,000 was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, partner, agent, affiliate, customer, participant, or co-conspirator.  When the identities of DOE

Defendants 1-1,000 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement with particularity.

35. Defendants' joinder in this Action is proper pursuant to Fed. R. Civ. Proc. 20(a)(2) because Plaintiffs assert a right to relief against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and questions of law or fact common to all Defendants will arise in the action.

## IV.  STATEMENT OF JURISDICTION

36. Jurisdiction is proper in the U.S. District Court for the Western District of Michigan, Southern Division pursuant to 28 U.S.C. § 1332 because: a) All Plaintiffs are citizens and residents of California, and no Defendants are citizens or residents of California; b) Lead Defendant HILLSDALE is a Michigan corporation with a primary place of business in Hillsdale County, Michigan; and c) There is more than $75,000 at issue for each of FARRELL, KIRBY, LOVE, and POWERS (because they received more than 75 HILLSDALE spams).

## V.  AT LEAST 1,443 UNLAWFUL SPAMS

37. Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed July 6, 2023).

38. California's False Advertising Law, Cal. Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted). "Fraud" in the context of a Cal. Business & Professions Code § 17500 False Advertising action does not mean the common-law tort. *Id.*, and *see also Buller v. Sutter Health*, 160 Cal. App. 4th 981, 986 (1st Dist. 2008); *Day v. AT&T Corporation*, 63 Cal. App. 4th 325, 332 (1st Dist. 1998). Plaintiffs are not bringing claims for fraud and are not required to plead with particularity.

**A.**    **The Emails at Issue are "Spams"; Counts; Subject Matter**

39.    Defendants advertised in at least <u>610</u> emails that FARRELL received that promoted HILLSDALE and its website, goods, and services.  FARRELL received these emails at his "California email address"[2] between December 8, 2022 and the filing of this Action.

40.    Defendants advertised in at least <u>17</u> emails that CARTER received that promoted HILLSDALE and its website, goods, and services.  CARTER received these emails at her California email address between December 8, 2022 and the filing of this Action.

41.    Defendants advertised in at least <u>55</u> emails that GREENBERG received that promoted HILLSDALE and its website, goods, and services.  GREENBERG received these emails at his California email address between December 8, 2022 and the filing of this Action.

42.    Defendants advertised in at least <u>201</u> emails that KIRBY received that promoted HILLSDALE and its website, goods, and services.  KIRBY received these emails at her California email address between December 8, 2022 and the filing of this Action.

43.    Defendants advertised in at least <u>251</u> emails that LOVE received that promoted HILLSDALE and its website, goods, and services.  LOVE received these emails at her California email address.  LOVE received 178 of these emails between December 8, 2022 and the filing of this Action.  LOVE also received 73 emails before that, from July 4-December 7, 2022.  These spams were included in the Action entitled *Love et al v. Hillsdale Inc. et al*, No. 23CV010833 (Super. Ct. Cal. Cty. of Sacramento filed Oct. 30, 2023) (the "Sacramento Action").  LOVE will dismiss the Sacramento Action as soon as this Action is filed.

44.    Defendants advertised in at least <u>309</u> emails that POWERS received that promoted HILLSDALE and its website, goods, and services.  POWERS received these emails at her California email address.  POWERS received 253 of these emails between December 8, 2022 and the filing of this Action.  POWERS also received 56 emails before that, from July 4-

---

[2] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state."  Cal. Bus. & Prof. Code § 17529.1(b).

December 7, 2022. These 56 emails were also included in the Sacramento Action, and POWERS will dismiss the Sacramento Action as soon as this Action is filed.

45. The emails at issue are "commercial email advertisements"[3] because they were initiated for the purpose of advertising and promoting HILLSDALE and its website, goods, and services. Importantly, the plain language of the definition ("or other disposition") makes it clear that Section 17529.5 regulates emails promoting HILLSDALE's website, goods, and services, even if HILLSDALE does not seek money from Plaintiffs. The subject matter of the emails includes but is not limited to:

- HILLSDALE online courses on DVDs, including: "American Citizenship and Its Decline," "An Introduction to C.S. Lewis: Writings and Significance," "C.S. Lewis on Christianity," "Classic Children's Literature," "Constitution 101," "Date's Divine Comedy," "Introduction to Aristotle's Ethics: How to Lead a Good Life," "Introduction to Western Philosophy," "Mark Twain: Tom Sawyer, Huckleberry Finn, and Selected Short Stories," "Mathematics and Logic: From Euclid to Modern Geometry," "The David Story: Shepherd, Father, King," "The Federalist Papers," "The Genesis Story: Reading Biblical Narratives," "The Rise and fall of the Roman Republic," "The Second World Wars," "Theology 101," "Winston Churchill and Statesmanship."

- HILLSDALE free online courses and study groups, including: "American Citizenship and Its Decline," "Ancient Christianity," "Big Pharma," "C.S. Lewis on Christianity," "Congress: How It Worked and Why It Doesn't," "Constitution 101: The Meaning and History of the Constitution," "Russia," "Supply-Side Economics and American Prosperity with Art Laffer," "The American Left: From Liberalism to Despotism," "The Great American Story: A Land of Hope," "The Great Reset?," "The Inklings," "The Real American Founding: A Conversation."

- HILLSDALE College hats and "Liberty Walk" notecards.

- HILLSDALE's Project to Defend Liberty Nationwide by Reaching and Teaching Millions.

- Betsy Ross flags.

- HILLSDALE's 1776 Curriculum.

- HILLSDALE's *Imprimus* publication.

---

[3] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(c).

- Pocket-size copies of American's founding documents.

- A means for spam recipients to promote their views on topics such as government, liberty, the Second Amendment, the Electoral College, and socialism; and help develop and finance HILLSDALE's strategy to reach and influence millions of Americans.

46.     The emails at issue are "unsolicited commercial email advertisements"[4] aka "spams" because Plaintiffs never gave "direct consent"[5] to, or had a "preexisting or current business relationship"[6] with, HILLSDALE – the Merchant-Advertiser in the spams.

47.     Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs have not waived any claims related to the spams at issue.

48.     The spams are all unlawful because they all have materially false, misrepresented, and/or forged information contained in or accompanying the email headers[7] (*see* <u>Section B</u>, below). Many also include third parties' domain names without permission (*see* <u>Section C</u>, below).

---

[4] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(o).

[5] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Cal. Bus. & Prof. Code § 17529.1(d) (emphasis added).

[6] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Cal. Bus. & Prof. Code § 17529.1(*l*).

[7] The terms "email header," "header," "headers," and "header information" are all synonymous and used interchangeably throughout this pleading, and carry the commonly understood meaning of those terms (i.e. email headers include the From, To, CC, Subject, and Date fields). *See* Internet Engineering Task Force, RFC 5322 – INTERNET MESSAGE FORMAT at § 3.6 (*19) (October 2008), *available at* https://tools.ietf.org/html/rfc5322.  In a nutshell, RFC 5322 sets forth the technical protocols that enable email to work.

**B.** <u>**Spams Sent Using Domain Names That are Not Readily Traceable to the Sender**</u>
<u>**Violate Section 17529.5(a)(2)**</u>

49.     Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

50.     Registration information for the domain names used to send spams is information contained in or accompanying email headers.

51.     Email headers includes the sending email address field, which is comprised of a *username* (the part before the @ sign) and the *domain name* (the part after the @ sign, ending with .com, .net, .us, .gov, .edu, etc.).  All of the sending domain names (e.g. conservativeintelalerts.com and libertynationtoday.com in the exemplar spams shown in <u>Exhibit A</u>) violate Section 17529.5(a)(2) and are at issue in this Action.

52.     A commercial emailer's use of untraceable domain names to conceal its identity constitutes a material misrepresentation and violates Section 17529.5(a)(2).  *Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1098-1101 (1st Dist. 2012); *Greenberg*, 65 Cal. App. 5th at 919-920.

53.     Although Plaintiffs do not bring claims under the federal CAN-SPAM Act, Plaintiffs point out that that the first item in the FTC's CAN-SPAM Act compliance guidelines states:

> **1. Don't use false or misleading header information.**  Your "From," "To," "Reply-To," and routing information – *including the originating domain name and email address* – must be accurate and identify the person or business who initiated the message.

*See* Federal Trade Commission, CAN-SPAM ACT: A COMPLIANCE GUIDE FOR BUSINESS, *available at* https://www.ftc.gov/tips-advice/business-center/guidance/can-spam-act-compliance-guide-business (last visited Oct. 22, 2021) (emphasis added).

54.     Besides those FTC guidelines, the CAN-SPAM Act makes much of the conduct alleged in this Complaint a felony.[8]  While Plaintiffs cannot and do not bring claims under the federal

---

[8] The criminal portion of the CAN-SPAM Act, 18 U.S.C. § 1037(a)(4), prohibits knowingly "register[ing], using information that materially falsifies the identity of the actual registrant, for [ ] two or more domain names, and intentionally initiat[ing] the transmission of multiple commercial electronic mail messages from any combination of such accounts or domain names," or conspiring to do so.  Under subsection (b), penalties include fines, imprisonment, or both.

1  CAN-SPAM Act, if HILLSDALE's Affiliate-Senders' actions constitute felony fraud under

2  federal law, such actions surely constitute material falsity and deception and violate Section

3  17529.5.

4  55.  The *Balsam* court went into great detail about the importance of being able to identify a

5  spam's *sender*, and why untraceable sending domain names violate Section 17529.5(a)(2).  203

6  Cal. App. 4th at 1098-99.  Indeed, the *Balsam* appellate court affirmed the trial court's judgment

7  in plaintiff's favor due to untraceable sending domain names, even where the spams clearly

8  identified the advertiser in the bodies.  *Id.* at 1090-91.

9  56.  None of the domain names that HILLSDALE's Affiliate-Senders used to send the spams

10  at issue identify HILLSDALE or the Affiliate-Senders on their faces.  Nor are any of the sending

11  domain names properly registered and readily traceable to the actual sender by querying the

12  publicly-accessible Whois database.  More specifically:

13  57.  **Proxy-Registered Domain Names**.  HILLSDALE's Affiliate-Senders sent <u>909</u> – 63% –

14  of the HILLSDALE spams at issue to Plaintiffs from one of the following proxy-registered

15  domain names: americanfreedomreport.com (69), aocalerts.com (236),

16  buildingourmovement.com (246), buildourmovement.com (11), conservativeintel.com (44),

17  defend-our-rights.com (13), leadamerica24.com (14), libertynationtoday.com (51),

18  patriotandfree.com (1), patriotvaluesdefense.com (97), republicansupport.com (10),

19  republicantaskforce.com (2), restore-our-nation.com (16), theconservativeinsider.com (3), the

20  freepatriotdaily.com (41), trumptrainnews.com (1), usconservativenetwork.com (54).  This

21  means that HILLSDALE's Affiliate-Senders engaged the services of third parties, such as

22  Domains by Proxy LLC and Whois Privacy Service, so that the proxy registration services'

23  identities, instead of HILLSDALE's Affiliate-Senders' true identities, appear in the results of a

24  query of the publicly-accessible Whois database.  Thus, a person querying the Whois database

25  for these domain names would not be able to identify the entities who actually controlled the

26  domain names and sent the spams.

27  58.  **Redacted Domain Names**.  HILLSDALE's Affiliate-Senders sent <u>534</u> – 37% – of the

28  HILLSDALE spams at issue to Plaintiffs from the following domain names, from which the true

identities of HILLSDALE's Affiliate-Senders were redacted from the registration information that appears in the results of queries of the Whois database: backingamericanow.com (271), conservativeintelalerts.com (238), patriotsonline.com (9), patriotusa.co (1), pencenews.live (15). Thus, a person querying the Whois database for these domain names would not be able to identify the entities who actually controlled the domain names and sent the spams.

59.     Therefore, all of the spams materially violate Section 17529.5(a)(2) due to the false and misrepresented domain name registrations.

**C.     Spams Containing Third Parties' Domain Names Without Permission Violate Section 17529.5(a)(1)**

60.     Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.  Unlike (a)(2) violations, (a)(1) violations are not limited to email headers.

61.     One thousand seventy two (1,072) – 74% – of the HILLSDALE spams at issue include the domain name **amazonaws.com**.  On information and belief, third-party Amazon.com Inc. owns the domain name amazonaws.com.  On information and belief, Amazon.com Inc. prohibits the use of its services for spamming.

62.     Two hundred fifty one (251) – 17% – of the HILLSDALE spams at issue include the domain name **amazonses.com**.  On information and belief, third-party Amazon Technologies Inc. owns the domain name amazonses.com.  On information and belief, Amazon Technologies Inc. prohibits the use of its services for spamming.

63.     Two hundred nine (209) – 14% – of the HILLSDALE spams at issue include the domain name **sparkpostmail.com**.  On information and belief, third-party MessageBird B.V. owns the domain name sparkpostmail.com.  On information and belief, MessageBird B.V. and its U.S. affiliate MessageBird USA Inc. prohibit the use of their services for spamming.

64.     Therefore, Plaintiffs allege that HILLSDALE and its Affiliates-Senders did not have permission to use any of the amazonaws.com, amazonses.com, and sparkpostmail.com domain names in any of the HILLSDALE spams at issue.

65.     In total, <u>1,231</u> – 85% – of the HILLSDALE spams at issue include one or more domain names owned by third parties who prohibit the use of their services for spamming.  Put another way, only <u>212</u> – 15% – of the HILLSDALE spams at issue do *not* violate Section 17529.5(a)(1).

66.     Plaintiffs are informed and believe and thereon alleges that HILLSDALE's Affiliate-Senders included these domain names in the spams because these domain names are owned by legitimate companies that prohibit spamming using their services.  Thus, the spams materially violate Section 17529.5 because they inherently falsely and deceptively suggest that Amazon.com Inc. *et al* endorse and ratify HILLSDALE and its Affiliate-Senders' spamming practices, which they do not.

**D.     <u>Subsequent Truth Does Not Cure Initial Falsity</u>**

67.     Truthful information anywhere in a spam does not cure false or misrepresented information in the headers.  *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (4th Dist. 2018), citing with approval *Williams v. Gerber Products Company*, 552 F.3d. 934, 939-40 (9th Cir. 2008) (ruling based on California law).

68.     Although certain portions of the spams identify HILLSDALE, all of the spams still fail to identify the actual senders because: a) The sending domain names are proxy-registered or the true operators' registration information has been redacted; b) The bodies of <u>1,092</u> spams that Plaintiffs received provide no information at all about the senders; c) The bodies of <u>313</u> spams that Plaintiffs received include P.O. Box addresses in Colorado or the address of a hotel in Virginia, and POP ACTA and O2M DIGITAL's *unregistered* fictitious/assumed/trade names – not their real names – and so the true identity of the sender is not readily ascertainable in the bodies of the spams; and d) The bodies of <u>38</u> spams that Plaintiffs received include a box at a commercial mail receiving agency in Pennsylvania, and PATRIOT AND FREE's *unregistered* fictitious names – not its real name – and so the true identity of the sender is not readily ascertainable in the bodies of the spams.

**E.** **HILLSDALE is Strictly Liable for Advertising in Spams Sent By its Affiliate-Senders; the Affiliate-Senders are Liable Too**

69.     There is no dispute that the spams at issue promote HILLSDALE and its website, goods, and services.  HILLSDALE realizes revenues and/or promotes its brand from the sale of the DVDs promoted in the spams, from attendees who enroll in online courses, from people who donate to HILLSDALE, etc.  The spams expressly state that they are "message[s] sponsored by Hillsdale College" or that "This sponsored message [ ] is on behalf of Hillsdale College."  The spams are all "signed" by HILLSDALE officials.  *See* <u>Exhibit A</u>.  For example:

| | | |
|---|---|---|
| Warm regards,<br>Larry P. Arnn<br>President, Hillsdale College<br>Pursuing Truth and Defending<br>Liberty Since 1844 | Best Regards,<br>Kyle Murnen, '09<br>Director of Online<br>Learning<br>Hillsdale College | Warm regards,<br>Bill Gray<br>Class of 2001<br>Vice President<br>National Donor Outreach<br>Hillsdale College |

70.     HILLSDALE, as the Merchant-Advertiser, is strictly liable for advertising in the spams at issue, even if its Affiliate-Senders actually sent them.  Cal. Bus. & Prof. Code §§ 17529(j), (k) and 17529.5(a).  Moreover, California courts reject Merchant-Advertisers' claims that they are immune from liability based on an email's sending domain name simply because the Merchant-Advertiser is identified in the body of an e-mail.  *Balsam*, 203 Cal. App. 4th at 1090-91. Ultimately, California courts have consistently held that where a Merchant-Advertiser's Affiliate-Senders misrepresent their identities, the Merchant-Advertisers are responsible. *Greenberg*, 65 Cal. App. 5th at 920 (emphasis in original), citing *Hypertouch*, 192 Cal. App. 4th at 820-21.  Of course, HILLSDALE's Affiliate-Senders are also liable for their own conduct, as they advertised, and/or conspired with HILLSDALE to advertise, in unlawful spams that promoted HILLSDALE and its website, goods, and services.

71.     No one forced HILLSDALE to outsource any of its advertising to third party spammers, but HILLSDALE chose to contract with and partner with the Affiliate-Senders – disreputable entities who actively took steps to conceal their identities by proxy-registering domain names or redacting their identities from the Whois database, and failing to identify themselves in the bodies of the spams – all to promote HILLSDALE and its website, goods, and services.

72.     The Affiliate-Senders acted as HILLSDALE's agents when they advertised in spams sent to Plaintiffs that promoted HILLSDALE and its website, goods, and services.

73.     Alternatively, the Affiliate-Senders formed a conspiracy (or conspiracies) with HILLSDALE to advertise in spams that promoted HILLSDALE and its website, goods, and services.  To achieve that goal, on information and belief, HILLSDALE and its Affiliate-Senders signed Marketing Contracts by which they agreed to share the benefits and the risks of the marketing venture.  On information and belief, Defendants operated the conspiracy(-ies) by advertising in and sending emails pursuant to the Marketing Contracts.

74.     Either way, Defendants committed wrongful acts pursuant to the agency or conspiracy(-ies) by advertising in unlawful spams that promoted HILLSDALE and its website, goods, and services, and Plaintiffs' statutory rights were violated when they received those unlawful spams.

75.     To the extent that HILLSDALE's Affiliate-Senders created certain false, misrepresented, and misleading information and included third parties' domain names in the spams without permission, as they sent and advertised in the spams at issue that promoted HILLSDSALE and its website, goods, and services,  HILLSDALE's Affiliate-Senders must be held liable for violations of Section 17529.5 because such wrongful acts were committed while acting either as HILLSDALE's agents, or in accordance with the general conspiracy to advertise in emails that promoted HILLSDALE and its website, goods, and services.

**F.      Plaintiffs Sue for Statutory Liquidated Damages; No Allegations or Proof of Reliance or Actual Damages is Necessary**

76.     The California Legislature defined statutory, liquidated damages to be $1,000 per spam. Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).  This figure is designed to be punitive, rather than compensatory for actual damages.  *Hypertouch*, 192 Cal. App. 4th at 842-845.

77.     The $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Cal. Business & Professions Code § 17538.43(b).

78.   Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam and punishing offenders.  In fact, California's spam law even has a criminal component at Section 17529.5(b)(3)(C) – it is a misdemeanor to send unlawful spams.

79.   Section 17529.5 does not require Plaintiffs to allege, suffer, or quantify any actual damages; allege or prove reliance on the advertisements contained in the spams; visit HILLSDALE's website; or purchase HILLSDALE's DVDs or enroll in its online courses. *Recipients* of unlawful spam have standing to sue and recover liquidated damages.  Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

**G.    Defendants' Actions (and Inactions) Were Willful and Preclude any Reduction in Statutory Damages**

80.   Section 17529.5 authorizes a court to reduce the statutory damages to $100 per spam. Cal. Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that they *established* reasonable practices and procedures to prevent unlawful spamming, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

81.   Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

82.   Even if Defendants had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed to be effective.

83.   Even if Defendants reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented to be effective.

84.   To the extent that any of HILLSDALE's Affiliate-Senders may have violated the terms of their Marketing Contracts with HILLSDALE (or their contracts with other Affiliate-Senders), that demonstrates that the contracts – and any compliance requirements included therein – are ineffective.

85.     Domain names do not register themselves.  Third parties' domain names do not insert themselves into emails.  The multiple statutory violations in the instant spams are not "clerical errors."  Defendants went to great lengths to create the false, deceptive, and misleading content described herein to deceive recipients as to who sent the spams.

86.     Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

## FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email,
California Business & Professions Code § 17529.5]
(Against All Defendants)**

87.     Plaintiffs hereby incorporate paragraphs 1-86 as though set forth in full herein.

88.     The statute of limitations for plaintiffs seeking statutory, liquidated damages for violations of Section 17529.5 is one year.  *Hypertouch*, 192 Cal. App. 4th at 845.

89.     FARRELL received 610 HILLSDALE spams at issue within one year prior to the filing of this Action.

90.     CARTER received 17 HILLSDALE spams at issue within one year prior to the filing of this Action.

91.     GREENBERG received 55 HILLSDALE spams at issue within one year prior to the filing of this Action.

92.     KIRBY received 201 HILLSDALE spams at issue within one year prior to the filing of this Action.

93.     LOVE received 64 HILLSDALE spams at issue from July 10-October 29, 2022, and 9 more from October 30-December 7, 2022.  HILLSDALE agreed in writing to extend LOVE's statute of limitations through and including October 31, 2023.  LOVE filed the Sacramento Action on October 30, 2023, thereby preserving the statute of limitations for those 73 spams she received through December 7, 2022 during the pendency of that Action.  LOVE received 178

more spams since December 8, 2022.  Thus, LOVE received <u>251</u> HILLSDALE spams at issue within the statute of limitations, as extended and tolled.

94.     POWERS received 31 spams at issue from July 4-October 29, 2022, and 25 more from October 30-December 7, 2022.  HILLSDALE agreed in writing to extend POWERS' statute of limitations through and including October 31, 2023.  POWERS filed the Sacramento Action on October 30, 2023, thereby preserving the statute of limitations for those 56 spams she received through December 7, 2022 during the pendency of that Action.  POWERS received 253 more spams since December 8, 2022.  Thus, POWERS received <u>309</u> HILLSDALE spams at issue within the statute of limitations, as extended and tolled.

95.     Defendants advertised in/conspired to advertise in at least <u>1,443</u> unsolicited commercial email advertisements that Plaintiffs received at their California electronic mail addresses that all had materially false and misrepresented information contained in or accompanying the email headers, and some of which included third parties' domain names without permission, a materially deceptive practice.  The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

96.     HILLSDALE is strictly liable for its Affiliate-Senders' unlawful spamming.

97.     The California Legislature set liquidated damages at $1,000 per unlawful spam.

98.     Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

99.     Plaintiffs seek reimbursement of their costs, including attorneys' fees, as authorized by Section 17529.5(b)(1)(C) and Fed. R. Civ. Proc. 54(d).

100.    The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Cal. Code of Civil Procedure § 1021.5.  By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### **PRAYER FOR RELIEF**

### **(Against All Defendants)**

A.      A Court Order declaring that Defendants violated California Business & Professions Code § 17529.5 by advertising/conspiring to advertise in unlawful spams sent to Plaintiffs that promoted HILLSDALE and its website, goods, and services.

B.      Judgment in Plaintiffs' favor in the amount of $1,000 liquidated damages per spam, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $1,443,000: at least $610,000 to FARRELL, at least $17,000 to CARTER, at least $55,000 to GREENBERG, at least $201,000 to KIRBY, at least $251,000 to LOVE, and at least $309,000 to POWERS (according to proof).

C.      Liquidated damages against HILLSDALE in the amount of $1,000 for each of the at least 1,443 unlawful spams at issue (at least $1,443,000) that Plaintiffs received (according to proof), in which it was advertised.

D.      Liquidated damages jointly and severally against POP ACTA, O2M DIGITAL, and HILLSDALE, in the amount of $1,000 for each of the at least 313 spams (at least $3136,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

E.      Liquidated damages jointly and severally against AOC ALERTS and HILLSDALE, in the amount of $1,000 for each of the at least 236 spams (at least $236,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

F.      Liquidated damages jointly and severally against BACKING AMERICA NOW and HILLSDALE, in the amount of $1,000 for each of the at least 271 spams (at least $271,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

G.   Liquidated damages jointly and severally against BUILD OUR MOVEMENT and HILLSDALE, in the amount of $1,000 for each of the at least <u>257</u> spams (at least $257,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

H.   Liquidated damages jointly and severally against CONSERVATIVE INTEL and HILLSDALE, in the amount of $1,000 for each of the at least <u>282</u> spams (at least $282,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

I.   Liquidated damages jointly and severally against LEAD AMERICA 24 and HILLSDALE, in the amount of $1,000 for each of the at least <u>14</u> spams (at least $14,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

J.   Liquidated damages jointly and severally against PATRIOT AND FREE and HILLSDALE, in the amount of $1,000 for each of the at least <u>55</u> spams (at least $55,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

K.   Liquidated damages jointly and severally against PENCE NEWS and HILLSDALE, in the amount of $1,000 for each of the at least <u>15</u> spams (at least $15,000) (according to proof) in which they advertised that promoted HILLSDALE and its website, goods, and services.

L.   Costs of suit and attorneys' fees, pursuant to Section 17529.5(b)(1)(C) and Fed. R. Civ. Proc. 54(d).

M.   Such other and further relief as the Court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    */s/ Adam G. Taub*
           Adam G. Taub (P48703)
           Attorney for Plaintiffs
           17200 West 10 Mile Rd. Suite 200
           Southfield, MI 48075
           Phone:  (248) 746-3790
           Email:   adamgtaub@clgplc.net

Dated: December 7, 2023

**COMPLAINT**

**Exhibit A**

"

Subject: What is the Great Reset?
From:    Hillsdale College via ☆CI<email@conservativeintelalerts.com>
To:      <masebruh@gmail.com>
Date:    Mon, 06 Mar 2023 15:07:12 -0600

*Please see a special message from our sponsor:*

Dear Fellow American,

Does America need a "Great Reset?"

In 2020, members of the world's elite met at the World Economic Forum and launched the Great Reset initiative to transform the world economy.

As Klaus Schwab—the founder and executive director of the Forum—wrote, "we need a 'Great Reset' of capitalism." If successful, this would have the effect of canceling our American way of life.

A recent Hillsdale College seminar considered the idea of the Great Reset, its ramifications for America, and pro-freedom alternatives.

**This seminar—titled "The Great Reset?"—is now available as a free online video series.**

I'm an image

Filmed on the Hillsdale campus, this video series will give you insight into:

- The origins and leaders of the Great Reset
- How the ideology of "woke capitalism" is infiltrating large corporations
- The connection between a cashless society and the Great Reset
- What "environmental justice" has to do with the Great Reset
- The Great Reset from China's perspective
- Alternatives to the Great Reset

**You can receive instant access to this free video series right now using this secure link:**

**https://lp.hillsdale.edu/the-great-reset-cca/**

You will learn about the Great Reset, the dangers it poses, and pro-freedom alternatives. And you can share these lessons with your family, friends, and more.

As America's economy continues to struggle in the aftermath of disastrous elite decisions, lessons

like these are essential to the defense of the free market and American liberty.

Use the link above to receive your Great Reset video series today.

Warm regards,

Larry P. Arnn
President, Hillsdale College
Pursuing Truth and Defending Liberty Since 1844

Unsubscribe from messages sponsored by Hillsdale College.

To Unsubscribe by email, please reply to this message with Unsubscribe as the Subject Line. Unsubscribe from all communications.

Privacy Policy

```
Subject: The greatest armed conflict in human history
From:    Liberty Nation Today <editor@alert.libertynationtoday.com>
To:      vsp0930@yahoo.com
Date:    Thu, 12 Jan 2023 17:25:21 +0000
```

This sponsored message from Liberty Nation Today is on behalf of Hillsdale College

Dear Fellow American,

Only a fraction of the 16 million Americans who fought bravely in World War II remain with us.

This fact means that we're losing more and more living memory of the greatest armed conflict in human history, which makes the study of World War II even more important.
To this end, Hillsdale College has produced an online course entitled "The Second World Wars."

Taught by historian Victor Davis Hanson, this course explores how the conflict's diverse theaters, belligerents, and ways of fighting came eventually to define a single war. And it examines the key investments, strategies, and leaders that led the Allied powers to victory over the Axis.

I'm an image

If you'd like to secure a DVD set before they're all gone, you can get one shipped directly to your home for any gift of $100 or more to Hillsdale College.

Here's a secure link to reserve your copy of **The Second World Wars**" on DVD:

**https://secured.hillsdale.edu/hillsdale/support-the-second-world-wars**

Thank you for preserving liberty for future generations of Americans through education with Hillsdale College!

Best regards,

Kyle Murnen, '09
Director of Online Learning
Hillsdale College

This message was originally sent to vsp0930@yahoo.com

Sent to Liberty Nation Today subscribers.
PO Box 1188 Fort Collins, CO 80522
Unsubscribe | Manage Data Preferences